IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANN E. ATWOOD<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | **ORDER**<br><br>Case No. 2:15-cv-00431-RJS-BCW<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Brooke Wells |

　　　　This case arises out of the Social Security Commissioner's denial of Plaintiff Ann Atwood's application for disability benefits. Atwood filed suit in this court, and Magistrate Judge Wells, to whom this case was referred, issued a Report and Recommendation recommending the court reverse the Administrative Law Judge's (ALJ) decision and remand for further proceedings, finding the ALJ improperly calculated Atwood's residual functional capacity (RFC) and improperly concluded Atwood was not disabled. The Commissioner timely objected to the Report and Recommendation. For the reasons below, after de novo review, the court adopts Judge Wells's Report and Recommendation, and reverses and remands.

　　　　In the proceedings below, the ALJ determined in relevant part that: (a) Atwood suffered severe physical and mental impairments; (b) she retained the RFC to perform "the full range of simple, light work as defined in 20 CFR 404.1567(b)"; and (c) given that RFC, the Social Security "grids" dictate that there are jobs in the national economy that Atwood can perform, so she is not disabled. Atwood contends this was error in two respects: (1) the ALJ found Atwood had a severe mental impairment but did not include that in her RFC; and (2) because she has a severe mental impairment, the grids, which assess only physical impairments, should not have

1

been used to determine disability.  The Commissioner disagrees, arguing that Atwood's RFC can be read to include her mental limitations and that Atwood's mental limitations were not sufficiently severe to bar use of the grids.

As to the RFC, the parties agree that a claimant's RFC must include all severe impairments (in addition to nonsevere impairments), but they disagree about whether this RFC covers Atwood's mental impairments in addition to her physical impairments.  As discussed, the ALJ concluded that Atwood "had the full residual functional capacity to perform the full range of simple, light work as defined in 20 CFR 404.1567(b)."  It is undisputed that "light work" refers to exertional restrictions, which is to say, restrictions related to physical impairments.  Thus, the dispute is over the ALJ's use of the word "simple."  The Commissioner contends this encapsulates Atwood's mental restrictions, while Atwood argues it refers to physical restrictions.

The court agrees with Atwood that the ALJ's use of the word "simple" either refers to physical impairments, or, if meant to cover Atwood's mental impairments, is insufficient to meet the ALJ's burden of "consider[ing] and discuss[ing]" each impairment.[1]  The most natural reading of "simple, light work" is that it relates to physical impairments only.  "Light work" is, as discussed, a physical restriction, and "simple" seems merely to modify it.  This interpretation is borne out by use of the modifier "as defined in 20 CFR 404.1567(b)."[2]  Section 404.1567(b) is titled "Physical Exertion Requirements," and appropriately so—it concerns only a claimant's physical restrictions, not her mental restrictions.  That the ALJ cabined his RFC assessment with this regulation suggests he was addressing only physical, not mental restrictions.

---

[1] *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013).

[2] AR 21.

But even assuming the ALJ meant "simple" to cover mental, rather than physical impairments, the word "simple" is insufficient to describe Atwood's mental limitations. When an ALJ distills a record of medical evidence into an RFC, he is instructed to "use . . . [established] definitions."[3] "Light work" is one of those definitions.[4] "Simple . . . work" is not. Rather, mental limitations are to be described using terms of art like "unskilled work," "semi-skilled work," or "skilled work."[5]

The Commission now argues that use of the word "simple" is a "perhaps unartful[]" attempt by the ALJ to conclude that Atwood could perform "unskilled work" because one of the regulations describes some of the demands of unskilled work as "remember[ing] *simple* instructions" and another refers to the ability to make "*simple* work-related decisions."[6] But the mere fact that the word "simple" is used in some of the regulations to describe unskilled work does not does not mean the ALJ's use of the word equates to a limitation to unskilled work. If the ALJ concluded that Atwood could perform unskilled work, he was required, per the regulations, to use that term. He did not, and the court declines to read it into his opinion.

The second point of dispute concerns the ALJ's use of the "grids." When an ALJ concludes that a claimant has limitations that preclude performing the claimant's past work, he is next tasked with determining whether, given the claimant's RFC, there are sufficient jobs in the national economy she could perform such that she is not "disabled." Often, this determination

---

[3] *See* 20 C.F.R. §§ 404.1567, 404.1568 ("When we make disability determinations under this subpart, we use the following definitions . . . .").

[4] *Id.* § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . .").

[5] *Id.* § 404.1568.

[6] *See* Dkt. 29 at 2 (citing SSR 85-15, 1985 WL 56857, at *4; Social Security Administration Program Operations Manual System (POMS) DI 25020.010(A)(3)) (emphasis added).

requires testimony of a vocational expert. But in certain, straightforward cases, the process can be shortcutted by relying on the generalized Medical Vocational Guidelines, or the "grids." The grids are charts that direct a finding of disabled or not disabled based solely on a claimant's age, education, prior work experience, and degree of exertional impairment.

Importantly, however, the grids generally apply only to physical impairments. Because mental impairments are not as easily generalized or quantified as physical impairments, the grids do not "appl[y] to direct a conclusion of 'Disabled' or 'Not disabled' where an individual has a nonexertional limitation or restriction."[7] Only if a claimant has solely physical, exertional restrictions, or if her mental restrictions are sufficiently minor such that they do not significantly impact her ability to perform at a given exertional limit, can the grids be used to determine disability.[8]

The ALJ did not find that Atwood had solely physical, exertional restrictions. To the contrary, he found she had "severe . . . mental difficulties." And he made no finding that Atwood's severe mental impairments were sufficiently minor that they did not significantly impact the level of work Atwood could otherwise perform. Yet, he used the grids to determine Atwood was not disabled. This was error.

The Commission argues that this error was harmless because the ALJ limited Atwood to unskilled work, and the jobs included in the grids assume a limitation of unskilled work, so use of the grids implicitly accommodated Atwood's restriction to unskilled work. This argument is founded on the mistaken premise that the ALJ concluded Atwood could perform unskilled work. The ALJ concluded only that Atwood could perform "simple, light work as defined in 20 CFR

---

[7] Social Security Ruling 83-14.

[8] Social Security Ruling 85-15.

404.1567(b)," which, as discussed above, says nothing about her mental limitations. It may be that Atwood's severe mental limitations render her unable to perform even unskilled work, in which case she would be disabled regardless of what the grids say about her exertional limitations.[9] Or, it may be that she is able to perform unskilled work, but with environmental restrictions.[10] In that case, the question would be whether those restrictions are severe enough to preclude reliance on the grids. Alternatively, the ALJ may ultimately conclude that Atwood *can* perform unskilled work, in which case reliance on the grids may be proper. But without any indication of how Atwood's severe mental limitations affect her RFC, reliance on the grids was error.

In short, the ALJ cannot both determine that Atwood has a severe mental impairment and simultaneously fail to include that impairment in her RFC. Similarly, he cannot rely solely on the grids to find Atwood not disabled where Atwood has a severe mental impairment that may affect the type of work she can perform. Judge Wells's Report and Recommendations is adopted in full. The decision of the ALJ is reversed, and the case is remanded.

SO ORDERED this 7th day of March, 2017.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[9] *See id.* (noting that "[a] substantial loss of ability to meet any of the[] basic work-related activities [of unskilled work] would . . . justify a finding of disability").

[10] *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations.").